## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ANDERSON NEWS, LLC, | ) | Case No. 09-10695 (CSS) |
| | ) | |
| Debtor. | ) | **Related to Docket Nos. 1124, 1126, and 1134** |
| | ) | |
| | ) | |
| | ) | |

## MAGAZINE CREDITORS' OPPOSITION TO MOTION TO ALLOW INTERLOCUTORY APPEAL FROM ORDERS APPROVING TERMS OF ENGAGEMENT OF COUNSEL

American Media, Inc., Bauer Magazine L.P., Bauer Publishing Company, L.P., Heinrich Bauer North America, Inc., Heinrich Bauer Publishing, L.P., Curtis Circulation Company, LLC, Kable Distribution Services, Inc., and Time Warner Retail Sales & Marketing, Inc. (collectively, the "Magazine Creditors"), hereby oppose the motion (the "Motion") of Holston Asset Management, LLC and Northshore Capital LLC (together, "Appellants"), for leave to appeal from the Bankruptcy Court's orders approving the Magazine Creditors' engagement of counsel to prosecute – on behalf of the bankruptcy estate – more than $69 million in claims (and potentially $270-plus million more), against Appellants' affiliates.[1]

In support of their Opposition, the Magazine Creditors represent as follows:

---

[1] Appellants' Motion's full title is "Motion to Allow Interlocutory Appeal Under 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8003 of the November 14, 2011 Orders Approving the Terms of Engagement and Compensation of Valle Makoff LLP and Potter Anderson & Coroon LLP and as Counsel in Derivative Actions." Docket No. 1134.

Appellants barely mention that they are affiliated with the Debtor and the prospective defendants. The only reference to their affiliation in their Motion is on line 17 of the 22-line footnote on page 2.

## Preliminary Statement

1.      Appellants' attempted interlocutory appeal is a heavy-handed effort by Anderson insiders to undermine Court-authorized lawsuits that seek, on behalf of the estate, to recover from Appellants' affiliates many millions of dollars of fraudulent and preferential transfers.

2.      Those insiders appeal from an order entered in the chapter 11 bankruptcy case of Anderson News, LLC (the "Debtor"). In that order, the bankruptcy court approved the terms of engagement of counsel to sue, for the benefit of all creditors, certain affiliates of the Debtor (and of the Appellants). As the following shows, this appeal completely fails to satisfy the standard for interlocutory appeal and should be dismissed.

3.      Previously, the bankruptcy court had appointed an Examiner to investigate claims against the Debtor's affiliates. The Examiner's report concluded that the estate held more than $69 million in preference and fraudulent transfer claims against ten of the Debtor's affiliates, based on pre-bankruptcy transfers by the Debtor, and potentially more than $270 million in additional claims, based on intercompany transfers for which the Debtor could not produce adequate documentation (collectively, the "Avoidance Action Claims").

4.      When the Debtor failed to prosecute the Avoidance Action Claims, the Magazine Creditors – who collectively hold more than $80 million in scheduled claims against the Debtor – moved for authority to do so derivatively (the "Standing Motion"). Separately, the Magazine Creditors sought authorization to retain counsel for the Avoidance Action Claims – Valle Makoff LLP and local counsel Potter Anderson & Corroon LLP (together, "Proposed Counsel") – and approval of their Engagement Agreement with Proposed Counsel (the "Retention Applications"). The Engagement Agreement provided for a contingency fee, payable from the recovery, if the prosecution of the Avoidance Action Claims was successful. The contingency fee arrangement,

2

as approved by the bankruptcy court, was negotiated and structured so as to not burden the estate with any out-of-pocket costs.[2]

5.      On October 25, 2011, the bankruptcy court held a hearing on the Standing Motion and the Retention Applications. With respect to the Standing Motion, the court found that the Avoidance Action Claims were "colorable" and that the Debtor's reluctance to assert them against its affiliates was "unreasonable and unjustifiable."[3]

6.      With respect to the Retention Applications, the court recognized that, if it failed to approve the terms of Proposed Counsel's engagement, "giving standing to this group of magazine creditors would be hollow."[4] It held that, under Bankruptcy Code § 503(b)(4), it could approve the Engagement Agreement's terms, including the contingency fee.[5]

7.      Subsequently, the court entered (i) an order approving the Standing Motion (the "Standing Order")[6] and (ii) separate orders approving the retention of Proposed Counsel on the terms set forth in the Engagement Agreement (the "Retention Orders").[7]

8.      Appellants now seek interlocutory review of the Retention Orders. At the hearing, they acknowledged that any prosecution of the Avoidance Actions Claims would be on a contingency-fee basis, but they argue that § 503(b)(4) does not permit the bankruptcy court to approve the terms of the contingency fee in advance.

---

[2]     The contingency fee – which Proposed Counsel will share and which the Magazine Creditors submit is modest under the circumstances – is tiered, and ranges from 15%, for any "Net Recovery" obtained before an answer is filed, to a maximum of 35%, for any "Net Recovery" obtained after the filing of a notice of appeal after judgment (plus 10% if Proposed Counsel is asked to engage in collection efforts). See Valle Makoff Retention Application at 7-8, Docket No. 957.  In addition, the Magazine Creditors have agrred to advance certain litigation expenses, such as expert reports.

[3]     10/25/11 Hearing Transcript, pp. 45-47 ("Transcript"). The Transcript is attached to Appellants' Motion as Exhibit "B."

[4]     Id., p. 94:2-4.

[5]     All references to "Bankruptcy Code § ___" are to sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

[6]     Docket No. 1102.

[7]     Docket Nos. 1100 (Potter Anderson) and1101 (Valle Makoff). The Retention Orders constitute Exhibit "A" to Appellants' Motion.

9. But Appellants do not satisfy the strict standard for interlocutory review, which requires that the order appealed from "(1) involves a controlling issue of law upon which there is (2) substantial grounds for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation." And Appellants do not even acknowledge the additional requirement that courts impose– that "exceptional circumstances" must exist to justify immediate review.[8]

10. In fact, this appeal is a transparent effort to delay and, if possible, derail permanently the prosecution of the Avoidance Action Claims against Appellants' affiliates – not to advance resolution of those Claims.

11. Notably, Appellants themselves assert substantial claims against the Debtor. For that reason, an outsider might expect that Appellants, acting in their own, independent, economic self-interest, would support the Magazine Creditors' efforts to bring $70-plus million into the estate to help pay their claims, on a contingency-fee basis, at no net cost to the estate. That Appellants have aligned themselves with the Debtor and the affiliated defendants demonstrates that, in opposing the both Standing Motion and the Retention Applications and in appealing from the Retention Orders, Appellants are acting only as proxies for the Debtor and the defendants.

12. Finally, the issue raised in this interlocutory appeal may well become moot by the end of the case. Accordingly, for all of these reasons, the appeal should be dismissed.

## FACTS[9]

13. The Debtor's bankruptcy case is complex, but the facts relevant to this appeal are simple, straightforward, and undisputed.

---

[8] In re Philadelphia Newspapers, LLC, 418 B.R. 548, 556-557 (E.D. Pa. 2009).

[9] The background facts are set forth in detail in the Examiner's Report, Docket No. 852. See, e.g., pp. 41-79 (description of Debtor, Anderson Entities, prebankruptcy events; pp. 83-106 (commencement of involuntary case, order for relief, appointment of Examiner).

14.     The Debtor, a Delaware limited liability company, is an indirect, wholly owned subsidiary of Anderson Media Corporation. Anderson Media Corporation controls a family of companies (the "Anderson Entities"). Collectively, the Anderson Entities have been one of the largest magazine and book wholesale distributors in the United States. The Anderson Entities include the Debtor, both Appellants, and all potential defendants identified by the Examiner.

15.     On February 16, 2009, the Debtor ceased business operations. On March 2, 2009, four creditors filed an involuntary chapter 7 bankruptcy petition against the Debtor. On December 30, 2009, the bankruptcy court overruled the Debtor's motion to dismiss its case, and entered an order for relief and an order converting the case to chapter 11.

16.     On March 26, 2010, two of the Magazine Creditors (Bauer Publishing Group and Kable Distribution Services, Inc.) moved for the appointment of a chapter 11 trustee or for alternative relief, including the appointment of an examiner. On April 20, 2010, the bankruptcy court ordered the appointment of an examiner to "examine the merits of any and all claims and causes of action held by the Debtor's estate" against the Debtor's affiliates.[10]

17.     On April 27, 2010, the Office of the United States Trustee appointed Don A. Beskrone as the Examiner.

18.     On May 12, 2011, the Examiner filed his 600-plus-page report.[11] In short, the Avoidance Action Claims identified by the Examiner include (a) preference and fraudulent transfer claims against ten named affiliates of the Debtor, totaling more than $69 million, and (b) additional claims against the Debtor's affiliates, based on intercompany postings consisting of

---

[10]     Docket No. 315.
[11]     Docket No. 852.

$102.7 million in credits and $167.6 million in debits, for which the Debtor could not produce adequate documentation.[12]

19.     The Report's Summary of Conclusions – summarizing the Examiner's findings with respect to the Avoidance Action Claims – is attached hereto as Exhibit "A."[13]

20.     When the Debtor failed to prosecute the Avoidance Action Claims, the Magazine Creditors filed their Standing Motion – seeking authority to sue derivatively – on July 29, 2011.[14] They filed the Retention Applications on September 2, 2011. As set forth above, the bankruptcy court held its hearing on October 25, 2011. As to the Avoidance Action Claims, the court stated, "I don't see any reason why there should be any delay."[15] It held that all 16 counts in the draft complaint prepared by the Magazine Creditors were "colorable" and that the Debtor's reluctance to sue was "unreasonable and unjustifiable."[16]

21.     With respect to the Retention Applications, the court explained that if it did not approve Proposed Counsel's engagement, the grant of standing would be pointless:

> Here we have a situation where I've approved the magazine creditors who have standing to bring these causes of action. And now we're running into a situation where we're cutting the legs under them – out from under them . . . if I don't approve some sort of system by which they're [Proposed Counsel] going to get paid.[17]

22.     The court added that without approving their engagement of counsel, "giving standing to this group of magazine creditors would be hollow."[18] It concluded that it had

---

[12]   Id., pp. 9-12.
[13]   As Appellants note, the Examiner concluded that the estate did not have claims against the Debtor's principals for breach of fiduciary duty or fraudulent conduct. That issue is not relevant to this appeal.
[14]   The Third Circuit confirmed the bankruptcy court's power to authorize a third party to prosecute estate claims, when the debtor unjustifiably refuses to do so, in Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 567-69 (3d Cir. 2003) (en banc).
[15]   Transcript, p. 45:24-25.
[16]   Id., pp. 45-47; 47:4-5.
[17]   Id., p. 79:8-13.
[18]   Id., p. 94:2-4.

authority to approve the contingency-fee terms of the Engagement Agreement under Bankruptcy Code § 503(b)(4).[19]

23.     On that basis, it entered the Standing Order and the Retention Orders.

24.     As shown below, there is no basis for an interlocutory appeal from the Retention Orders. Accordingly, the district court should dismiss this appeal.

## ARGUMENT

### I.     The Standard for Interlocutory Review

25.     District courts have discretion to exercise appellate jurisdiction over bankruptcy court orders under 28 U.S.C. § 158(a) and Bankruptcy Rule 8003. But neither the statute nor the rule establishes criteria for the exercise of that discretion. District courts in the Third Circuit apply the criteria set forth in 28 U.S.C. § 1292(b), governing interlocutory appeals from district court orders to the Court of Appeals. Under §1292(b), immediate review of an interlocutory order is appropriate only when the order  "(1) involves a controlling issue of law upon which there is (2) substantial grounds for difference of opinion as to its correctness, **and** (3) if appealed immediately, may materially advance the ultimate termination of the litigation." In re Philadelphia Newspapers LLC, 418 B.R. 548, 556-557 (E.D. Pa. 2009)(emphasis added).

26.     Appellants acknowledge the test identified in Philadelphia Newspapers, but they do not discuss how any of the three prongs, much less each of them, apply there. Moreover, Appellants fail to mention an additional requirement – the appellant must show that "exceptional circumstances" justify immediate review:

> Because an interlocutory appeal represents a deviation from the basic judicial policy of deferring review until the entry of a final judgment, the party seeking leave to appeal an interlocutory order must also demonstrate that exceptional circumstances exist.

Philadelphia Newspapers LLC, 418 B.R. at 557 (emphasis added).[20]

---

[19]      Id., 89-95.

27.    This appeal does not satisfy any of these requirements and should be dismissed.

**II.    This Appeal Does Not Present a Controlling Issue of Law as to Which There Are Substantial Grounds for Difference of Opinion**

28.    The issue on appeal – the court's power to approve the terms of Proposed Counsel's compensation under Bankruptcy Code § 503(b)(4), subject to review of final fee applications – does not present a controlling issue of law with respect either to the underlying litigation against the Debtors' affiliates or to the resolution of the bankruptcy case. The bankruptcy court's construction of § 503(b)(4) has no substantive bearing whatsoever on the merits of the Avoidance Action Claims, the allowance or disallowance of claims against the Debtor, any other litigation or issue in the bankruptcy case, or whether the Debtor will be able to propose a reorganization plan or be forced to liquidate.

29.    In fact, the issue is not a controlling issue of law at all – it is completely peripheral to all important matters in the bankruptcy case.

30.    Moreover, Appellants have failed to show "substantial grounds" to doubt the bankruptcy court's application of § 503(b)(4).

31.    Bankruptcy Code § 503(b)(4) permits a bankruptcy court to award attorney fees to a creditor who prosecutes an avoidance action on the estate's behalf. The statute does so by providing that the attorney fees constitute an allowed administrative expense of the bankruptcy estate. Thus, under § 503(b)(4), the following constitutes an administrative expense:

> (4)    reasonable compensation for professional services rendered by an attorney
> . . . of an entity whose expense is allowable under subparagraph . . . (B) . . . of
> [Bankruptcy Code § 504(b)(3)], based on the time, the nature, the extent, and the
> value of such services, and the cost of comparable services [in a non-bankruptcy

---

[20]    See also Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.), 451 B.R. 343, 348-49 (D. Del. 2011) ("Plaintiffs fail to present exceptional circumstances justifying the need for immediate review. 'Interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation'") (emphasis added, citation omitted).

case], and reimbursement for actual, necessary expenses incurred by such attorney
. . . .[21]

32.     Subparagraph (B) of Bankruptcy Code § 503(b)(3) refers to a "creditor that

recovers, after the court's approval, for the benefit of the estate any property transferred or

concealed by the debtor."[22]

33.     Here, the bankruptcy court authorized the Magazine Creditors to prosecute the

Avoidance Action Claims on the estate's behalf. It follows that the Magazine Creditors are

precisely an "entity" described in § 503(b)(3)(B), and their Proposed Counsel is an "attorney"

described in § 503(b)(4). Accordingly, if the Magazine Creditors' prosecution of the Avoidance

Action Claims is successful, Proposed Counsel's compensation would be allowable as an

administrative expense under § 503(b)(4).

34.     At the hearing, Appellants acknowledged, and the court agreed, that regardless of

who prosecuted the Avoidance Action Claims, the litigation would proceed on a contingency-fee

basis.[23] Nonetheless, Appellants argued that under § 503(b)(4), the court could not approve the

contingency fee in the Engagement Agreement in advance, but had to wait until after the

litigation was complete.

35.     The court flatly rejected that argument, stating: "[t]here's nothing in 503 that says

that I have to wait."[24] Later, after carefully reviewing § 503(b)(4) and analogizing to Bankruptcy

Code § 328 (under which the court can approve a trustee's retention of counsel on any

reasonable terms, including a contingency fee), the court stated, "that means to me that I can

approve the retention agreement here under Section (b)(4) in advance of the actual recovery of

---

[21]     11 U.S.C. § 503(b)(4).

[22]     11 U.S.C. § 503(b)(3).

[23]     See, e.g., Transcript, p. 27:23-28:3 (Appellants' counsel: if Debtor filed these claims, normally it would engage contingency-fee counsel); p. 31:25-32:6 (Debtor's counsel: Debtor would do exactly as Magazine Creditors did, find competent contingency counsel); p. 46:8-14 (Court agreed).

[24]     Transcript, p. 65:23.

funds. All right? It's basically the same effect as 328."[25] And despite a lengthy, detailed parsing of the statute, Appellants were unable to point to a contrary provision in the statute.

36.     Appellants rely heavily on a California bankruptcy court decision, In re Continental Coin, 380 B.R. 1 (Bankr. C.D. Cal. 2007), aff'd 2009 WL 2589634 (C.D. Cal. August 21, 2009. In that case, the bankruptcy court authorized a creditor to sue the chapter 11 trustee, on the estate's behalf, for breach of duty and gross negligence, but denied the creditor's request to retain counsel under Bankruptcy Code § 327, on the ground that § 327 refers only to the "trustee." Instead, the court said that the creditor must seek reimbursement of its attorney fees from the estate under § 503(b)(4) after the litigation concluded.

37.     But the Continental Coin creditor did not argue that the court could have approved the terms of its counsel's retention in advance under § 503(b)(4), and the court did not address the issue. Accordingly, that case does not stand for the proposition that, when a court authorizes a creditor to sue on a debtor's behalf, because the debtor has unjustifiably refused to sue, the court may never preapprove the terms of the creditor's counsel's engagement.

38.     Thus, there is no authority directly contrary to the bankruptcy court's holding here, and the court's reading of the statute – that nothing in § 503(b)(4) explicitly prohibits preapproval of a contingency fee in appropriate circumstances – is correct. Appellants disagree with the court's conclusion, but that disagreement – by itself – does not constitute "substantial grounds for a difference of opinion." See Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.), 451 B.R. 343, 348 (D. Del. 2011) ("movant's mere disagreement with the ruling is not a substantial ground for difference of opinion for Section 1292(b) purposes") (citations omitted).

---

[25]     Transcript, p. 93:11-14. Contrary to Appellants' contention (Motion, 3-4), the court did not acknowledge that its reading was "tortured." As used by the court, "tortured" refers clearly to its detailed review of § 503's subsections and sub-subsections, including its inadvertent reference, later corrected, to § 503(c) instead of § 503(b). Transcript at 91:11 – 94:2.

39.     Moreover, there is no rational reason why the court would have authority to approve in advance a contingency fee payable to the debtor's or trustee's lawyer to prosecute a claim, but not a contingency fee payable to a creditor to prosecute the same claim, on the debtor's behalf, when the debtor has wrongfully refused to sue.

40.     Thus, Appellants have not shown that substantial grounds exist to dispute the court's conclusion. More important, as discussed below, resolution of this peripheral issue will not advance the litigation of the Avoidance Action Claims or the resolution of the bankruptcy case as a whole.

## III.   Interlocutory Review Will Not Materially Advance the Termination of the Litigation or the Bankruptcy Case – In Fact, Appellants Hope to Create Material Delay

41.     Appellants do not attempt to show that interlocutory review of the Retention Orders will materially advance the termination of the litigation against their affiliates or of the bankruptcy case. In fact, the issue on appeal has no substantive bearing on either matter.

42.     In re Philadelphia Newspapers LLC, supra, shows how this test is satisfied. In that case, affiliated debtors had moved for bankruptcy court approval of bidding procedures for an asset sale under a proposed reorganization plan. The bidding procedures would have precluded the debtors' secured creditors from "credit bidding" the amount of their claims. On October 8, 2009, the bankruptcy court denied the motion, and the debtors appealed.[26]

43.     The district court granted interlocutory review. It found that whether the Bankruptcy Code granted secured creditors the right to credit bid in a sale under a plan was a controlling issue as to which substantial ground for difference of opinion existed, and that

---

[26]     418 B.R. at 553-55.

"allowing an immediate appeal will expedite a decision on confirmation of the Debtors' proposed plan, thereby facilitating the ultimate termination of these bankruptcy cases."[27]

44.     That is what this test requires – that an immediate appeal have a material impact on the timely and ultimate conclusion of the underlying litigation and the bankruptcy case. Of course, the dispute over the preapproval of Proposed Counsel's contingency fee would have no such impact.

45.     In fact, Appellants' intention is precisely the opposite. It is <u>not</u> to advance the conclusion of the underlying litigation or the Debtor's case, but to delay for as long as possible – and hopefully derail permanently – the prosecution of the Avoidance Action Claims against their affiliates. Appellants hope that, if the Magazine Creditors are unable to engage counsel to prosecute those claims, no one will do so, and the estate will recover only if the defendants elect to make a token settlement offer.

46.     Normally, creditors would <u>support</u> an effort to recover millions of dollars for a bankrupt estate. Despite their large claims, however, Appellants do not do so, because of their affiliation with the defendants.

## IV.     No Exceptional Circumstances Justify Interlocutory Appeal

47.     Appellants do not even mention the additional requirement that courts impose – that "exceptional circumstances" exist that justify immediate review. Nor could they satisfy that requirement.

48.     In <u>In re Philadelphia Newspapers LLC</u>, discussed above, the district court found "exceptional circumstances" in the timing of the proposed asset sale: "exceptional circumstances

---

[27]     <u>Id.</u>, at 557.

exist to justify immediate review of the October 8 Order <u>due to the urgency of resolving the credit bid issue in light of the Auction scheduled for November 18, 2009.</u>"[28]

49.     Thus, "exceptional circumstances" refers to the situation in which an immediate appeal is necessary in order to expedite or facilitate important, simultaneous developments in the case. There are no comparable circumstances here. There are no pending proceedings making it "urgent" that the district court construe Bankruptcy Code § 503 at this time. In fact, as shown below, if the appeal is dismissed, the issue may become moot by the end of the case.

## V.     **This Issue May Become Moot**

50.     Paragraph 5 in the Valle Makoff Retention Order recites that –

5.     Any amounts paid to Valle Makoff in connection with this engagement, including the reimbursement of costs, are subject to this Court's approval, pursuant to 11 U.S.C. §§ 503(b)(3) and 503(b)(4), of a final application filed by Valle Makoff.

51.     Paragraph 5 in the Potter Anderson Retention Order is the same (except that it refers to Potter Anderson instead of Valle Makoff).

52.     Thus, the Retention Orders do not constitute final approval of Proposed Counsel's fees. Like all professionals paid from the assets of a bankruptcy estate, Proposed Counsel must file final fee applications, and notwithstanding the court's approval of the Engagement Agreement, the fees will be subject to review for reasonableness.

53.     Under these circumstances, it is possible that Appellants will not object to Proposed Counsels' fees, as finally awarded by the court. If so, the issue raised in this appeal would become moot. [29] Alternatively, if Appellants are dissatisfied with the final fee award, they

---

[28]     <u>Id.</u>, at 557 (emphasis added). In light of this time pressure, the district court granted an expedited appeal from the October 8 order and heard argument on November 3. <u>Id.</u>, at 556. It issued its opinion on November 10, 2009.

[29]     Although not likely, it is theoretically possible that there could be no recovery from the Avoidance Action Claims, and no fees payable to Proposed Counsel. In that case as well, this issue would be moot.

can appeal at that time, both from the order awarding fees and, if appropriate, from the Retention

Orders. There is absolutely no reason to hear this interlocutory appeal at this time.

## CONCLUSION

This appeal meets none of the conjunctive criteria for interlocutory review. There are no

"exceptional circumstances," and if the issue does not become moot, there is no reason why it

cannot be raised at the end of the case. Accordingly, the District Court should dismiss this

appeal.

Dated:  December 12, 2011
      Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**


*/s/Jeremy W. Ryan*
Stephen C. Norman (DE Bar No. 2686)
Jeremy W. Ryan (DE Bar No. 4057)
Etta R. Wolfe (DE Bar No. 4164)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:  snorman@potteranderson.com
      jryan@potteranderson.com
      ewolfe@potteranderson.com
and

OF COUNSEL:
Jeffrey B. Valle, Esq.
**VALLE MAKOFF LLP**
11911 San Vicente Blvd., Suite 324
Los Angeles, CA 90049
Telephone:  (310) 476-0300
Email:  jvalle@vallemakoff.com

*Counsel for American Media, Inc., Bauer
Magazine L.P., Bauer Publishing Company, L.P.,
Heinrich Bauer North America, Inc., Heinrich
Bauer Publishing, L.P., Curtis Circulation
Company, Kable Distribution Services, Inc., and
Time/Warner Retail Sales & Marketing, Inc.*

1038701v.2

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ANDERSON NEWS, LLC, | ) | Case No. 09-10695 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## <u>REPORT OF DON A. BESKRONE, ESQ., EXAMINER</u>

Ricardo Palacio (I.D. No. 3765)
Richard L. Renck (I.D. No. 3893)
Catherine A. Gaul (I.D. No. 4310)
Andrew D. Cordo (I.D. No. 4534)
Benjamin Wilson Keenan (I.D. No. 4724)
Karen B. Skomorucha (I.D. No. 4759)
F. Troupe Mickler IV (I.D. No. 5361)
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899-1150
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

*Counsel to Examiner, Don A. Beskrone, Esq.*

Dated: May 12, 2011

**D.     SUMMARY OF CONCLUSIONS**

This Report is the work product of the Examiner and his professionals.  The information and statements contained herein – representing the Examiner's conclusions and opinions – should not be taken as admissions or findings for or against any person or entity.[31]

The Examiner discovered no facts during the examination process indicating that the Debtor, its managers, or its affiliates engaged in fraudulent conduct with regard to the matters examined.  Similarly, the Examiner found no basis to conclude that claims exist on behalf of the Estate, sufficient to meet the Report Standard, for any breach of fiduciary duty with regard to the matters examined.

The Examiner concludes, however, that claims exist on behalf the Estate, sufficient to meet the Report Standard, against:[32]

- *Anderson Management Services, Inc. ("__Anderson Management__") for:*

  A.     The avoidance and recovery of $1,000 as preferential transfers under 11 U.S.C. §§ 547 and 550; and

  B.     The avoidance and recovery of $8,338,000 (some or all of which may be attributed to insufficient documentation or support) as constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550, and Delaware's Uniform Fraudulent Transfer Act ("UFTA").

- *Anderson Media for:*  the avoidance and recovery of $301,000 (some or all of which may be attributed to insufficient documentation or support) as constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550, and Delaware's UFTA.

---

Del. Oct. 13, 2000) (describing section 547(c) exceptions as affirmative defenses).

[31] The Report includes discussions of facts that may be helpful to understanding the conclusions reached herein, but relate to parties and topics that are not subjects of the examination. The Examiner does not reach any conclusions concerning persons, entities or topics other than those specifically identified in the Report. Moreover, nothing in the Report should be interpreted as meaning the Examiner reached any conclusions regarding the Antitrust Action, the merits thereof or claims, if any, arising in connection therewith. Those topics are beyond the scope of this examination.

[32] The listing of the various possible claims is not intended to suggest the availability of a double-recovery. Rather, such claims represent the Examiner's views of independent and alternative claims that may arise from a single transaction or set of common facts.

- ***Anderson News Company Southwest, LLC ("<u>Anderson News Southwest</u>") for:*** the avoidance and recovery of $702,000 as preferential transfers under 11 U.S.C. §§ 547 and 550.

- ***Anderson Services, LLC ("<u>Anderson Services</u>") for:***

  A.   The avoidance and recovery of $283,000 as preferential transfers under 11 U.S.C. §§ 547 and 550; and

  B.   The avoidance and recovery of $10,003,000 (some or all of which may be attributed to insufficient documentation or support) as constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550, and Delaware's UFTA.

- ***Brookvale Holdings, LLC ("<u>Brookvale</u>") for:***

  A.   The avoidance and recovery of $1,811,000 (some or all of which may be attributed to insufficient documentation or support) as constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550, and Delaware's UFTA; and

  B.   The Debtor's sale of its interest in Twin Rivers (as defined herein) to Brookvale as a constructive fraudulent transfer under 11 U.S.C. §§ 548 and 550, and Delaware's UFTA.

- ***Display Services, Inc. ("<u>Display</u>") for:*** the avoidance and recovery of $93,000 as preferential transfers under 11 U.S.C. §§ 547 and 550.

- ***First Media Capital Corporation ("<u>FMC</u>") for:***

  A.   The FMC Revolver

      1.   the avoidance and recovery of $22,355,552 as preferential transfers under 11 U.S.C. §§ 547 and 550;

      2.   the avoidance and recovery of $7,855,552 as constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550, and Delaware's UFTA; and

      3.   the avoidance and recovery of approximately $109,000 to $216,000 in interest payments as constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550, and Delaware's UFTA.

  B.   The FMC Factoring Arrangements

      1.   the recharacterization of the FMC factoring arrangements from a

sale (or factoring) of accounts receivable to loan transactions;

2.   the avoidance and recovery of $14,067,320 as preferential transfers under 11 U.S.C. §§ 547 and 550; and

3.   the avoidance and recovery of approximately $264,000 to $312,000 in (effective) interest payments as constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550, and Delaware's UFTA.

- **Magazine Information Network, LLP (*"Magazine Information Network"*) for:** the avoidance and recovery of $13,000 (some or all of which may be attributed to insufficient documentation or support) as constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550, and Delaware's UFTA.

- **MSolutions, LLC (*"MSolutions"*) for:**

  A.   The avoidance and recovery of $61,000 as preferential transfers under 11 U.S.C. §§ 547 and 550; and

  B.   The avoidance and recovery of $2,161,000 (some or all of which may be attributed to insufficient documentation or support) as constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550, and Delaware's UFTA.

- **Prologix Distribution Services East, LLC (*"Prologix East"*) for:** the avoidance and recovery of $245,000 as preferential transfers under 11 U.S.C. §§ 547 and 550.

- **Twin Rivers Technology Group, LLC (*"Twin Rivers"*) for:**

  A.   The avoidance and recovery of $8,000 as preferential transfers under 11 U.S.C. §§ 547 and 550; and

  B.   The avoidance and recovery of $7,658,000 (some or all of which may be attributed to insufficient documentation or support) as constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550, and Delaware's UFTA.

As set forth more fully in Appendix 1, the Examiner believes further investigation is warranted to determine whether information or documentation exists to support various of the transfers made by the Debtor to insiders, including many of the transfers giving rise to constructive fraudulent transfer claims identified above. Because of the Report Standard used by

the Examiner to gauge the existence of claims against insiders, the Examiner is compelled to conclude that a claim exists in the absence of sufficient support for a given transfer. Accordingly, with the benefit of further investigation, certain of the transfers or amounts thereon identified above as constructively fraudulent may be reduced or eliminated if sufficient information or documentation is produced.

In that same vein, the Examiner has identified approximately $102.7 million of debits and $167.6 million of credits in intercompany postings that lack sufficient or, in some cases, any supporting documentation. As explained in detail in Appendix 1 § VII.D, the Examiner's professionals sampled and tested an array of intercompany postings between the Debtor and certain of its affiliates. From that testing, the Examiner determined that many of the postings could not be justified or supported. However, the debits or credits identified could not be fairly ascribed to any particular insider. That was so because a fair and representative population of insider transferees (or transferors) could not be drawn from the samples tested.

Moreover, even though the Report Standard compels a conclusion that one or more claims exist against one or more insiders for constructive fraudulent transfer(s) because of insufficient documentation, the Examiner does not reach herein a conclusion on the existence of a claim against any particular insider related to the intercompany postings. The information was not available for the Examiner to do so. The Examiner highlights the intercompany postings as an area that merits further investigation to establish whether such a claim exists against any insider.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ANDERSON NEWS, LLC, | ) | Case No. 09-10695 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, Etta R. Wolfe, hereby certify that on this 12th day of December 2011, I caused a true and correct copy of the foregoing **Magazine Creditors' Opposition to Motion to Allow Interlocutory Appeal from Orders Approving Terms of Engagement of Counsel** to be served upon the parties listed on the attached service list in the manner indicated thereon.


Dated:  December 12, 2011
        Wilmington, Delaware



Etta R. Wolfe (DE Bar No. 4164)

**First Class Mail**
Jeffrey R. Gleit, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY  10019-6799

**Hand Delivery**
Joel A. Waite, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

**Hand Delivery**
Domenic E. Pacitti, Esq.
Klehr Harrison Harvey Branzburg LLP
919 Market Street, Suite 1000
Wilmington, DE 19801

**First Class Mail**
Morton R. Branzburg, Esq.
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103

**First Class Mail**
Grant T. Stein, Esq.
David A. Wender, Esq.
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

**Hand Delivery**
Office of the United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE  19801

Pac#1038811